UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE DANIELS,

        Plaintiff,                  CIVIL ACTION NO. 16-cv-10452

        v.                          DISTRICT JUDGE MARIANNE O. BATTANI

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Julie Daniels seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 18). Plaintiff also submitted a reply brief in support of her Motion for Summary Judgment. (Docket no. 19.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.      RECOMMENDATION**

        For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 17) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 18) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on January 29, 2013, alleging that she has been disabled since January 10, 2010, due to anxiety, depression, brain trauma, panic attacks, Stockholm syndrome, and battered wife syndrome. (TR 145-51, 174.) The Social Security Administration denied Plaintiff's claims on May 2, 2013, and Plaintiff requested a *de novo* hearing. (TR 99-109, 114-15.) On May 28, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) John Dodson. (TR 69-91.) In a July 25, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 55-64.) The Appeals Council declined to review the ALJ's decision (TR 1-7), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff summarized the vocational expert's (VE's) testimony and the medical evidence in the argument portion of her brief. (Docket no. 17 at 5-6, 7-14.) Defendant, in her brief (docket no. 18 at 4-11), and the ALJ, in his decision (TR 58, 59-62, 63), also set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

**IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from the alleged onset date of January 10, 2010, through the date last insured of December 31, 2013. (TR 57.) The ALJ also found that Plaintiff suffered from the following severe impairments: post-traumatic stress disorder (PTSD), depression, and panic disorder with agoraphobia. (TR 57.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 57-59.) The ALJ then found that, through the date last insured, Plaintiff had the following RFC:

> [C]laimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: only work that is unskilled in nature and entails no production-like standards; no more than occasional, superficial contact with the public; no more than occasional interaction with co-workers and supervisors; no concentrated exposure to loud noises (e.g. noise level of an office-setting).

(TR 59-62.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 63.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 10, 2010, through December 31, 2013. (TR 55, 64.)

**V. LAW AND ANALYSIS**

    **A. Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127

F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

## B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

4

> (1) Plaintiff was not presently engaged in substantial gainful employment; and
>
> (2) Plaintiff suffered from a severe impairment; and
>
> (3) the impairment met or was medically equal to a "listed impairment;" or
>
> (4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter

upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "[t]he [ALJ] did not consider the [VE's] testimony and other evidence of record concerning the impact on [Plaintiff's] ability to work of necessary absences from work resulting from her various psychiatric and psychological maladies.  Therefore, the [ALJ's] finding that [Plaintiff] could perform the range of jobs testified to by the [VE] is not supported by substantial evidence;" and (2) "[w]hen the entire record is examined, including the entirety of the [VE's] testimony, it is clear that the [ALJ's] decision is not based on substantial evidence in the whole record."  (Docket no. 17 at 4-17.)

> 1. *Plaintiff's Argument Regarding the ALJ's Consideration of/Reliance on the VE's Testimony*

At the administrative hearing, the ALJ asked the VE whether there would be jobs available in the regional economy for an individual of the same age, education, and work experience as Plaintiff, who would be capable of unskilled work with no production-like standards; occasional, superficial contact with the public; and occasional interaction with co-workers and supervisors; but who must avoid concentrated exposure to loud noises.  (TR 87-88.)  The VE responded that such an individual could perform light, unskilled work as a general office clerk, for which there were 10,000 jobs available in the regional economy; a visual inspector, for

which there were 2,200 jobs available in the national economy;[1] and a housekeeper, for which there were 5,000 jobs available in the regional economy. (TR 88.) Plaintiff's attorney then asked the VE whether that range of available jobs would be limited if credit was given to Plaintiff's testimony regarding her difficulties in concentration and daily random panic attacks. (TR 88-89.) Before the VE could answer, the ALJ compounded that question by adding that due to whatever reason, Plaintiff would be off task more than 30 percent of the day. (TR 89.) The VE responded that there would be no competitive jobs for that person. (TR 89.) The VE further testified that an employer would not tolerate a person being off task more than 20 percent of the workday or having more than eight absences per year. (TR 89.)

Plaintiff alleges that the ALJ committed reversible error by failing to rely upon this latter portion of the VE's testimony, especially where it is consistent with the Social Security Administration's state-agency consultant's opinion. (Docket no. 17 at 5-6 (citing TR 105-08).) In fact, on May 1, 2013, the state-agency consultant, David A. Harley, Ph.D., reviewed Plaintiff's medical file and assessed Plaintiff's mental RFC. (TR 99-108.) Dr. Harley opined that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions; to carry out detailed instructions; to sustain an ordinary routine without special supervision; to make simple work-related decisions; to accept instructions and respond appropriately to criticism from supervisors; or to get along with coworkers or peers. (TR 105, 106.) He also found that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and to respond appropriately to changes in the work setting, among other things. (TR 105, 106.) And, as Plaintiff points out, Dr. Harley further opined that Plaintiff's concentration, focus, and task persistence were moderately limited by intrusive

---

[1] Plaintiff points out that the ALJ erred in his decision by stating that the 2,200 visual inspector jobs were available in the regional economy. (Docket no. 17 at 5 (citing TR 63).) The Court acknowledges the ALJ's misstatement in this regard but does not find, nor does Plaintiff allege, that it constitutes a reversible error.

thoughts, legal issues, and ongoing emotional states such that she was likely to need greater than average work absence to attend her ongoing mental health appointments and medication reviews. (TR 105-06.) He added that she would do well to have the flexibility and protections afforded by the FMLA in her employment. (TR 106.) Ultimately, Dr. Harley determined that Plaintiff was not disabled because she was still able to handle simple, repetitive tasks on a sustained basis. (TR 104, 108.)

The ALJ reviewed Dr. Harley's opinion and found much of it to be persuasive. (TR 61.) But the ALJ found Dr. Harley's opinion regarding Plaintiff's deficiencies in concentration, persistence, and pace to be inconsistent with the results of Plaintiff's May and June 2013 mental status exams administered by her treating psychiatrist, Dan G. Guyer, M.D., which revealed that Plaintiff's thought processes, attention, concentration, comprehension, memory, judgment, and insight were "okay." (TR 61, 366, 370.) Because the ALJ did not adopt Dr. Harley's opinion regarding Plaintiff's deficiencies in concentration, persistence, and pace, he likewise did not incorporate into the RFC Dr. Harley's opinion that Plaintiff would likely need greater than average work absence to attend her ongoing mental health appointments and medication reviews as a result of those deficiencies.[2] Therefore, the ALJ's non-reliance on the VE's testimony that there would be no competitive employment for Plaintiff if she would need to be off task for more than 30 percent of the workday or have more than eight absences per year was not erroneous.

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5. The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. *Id*. However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who

---

[2] Notably, Plaintiff does not challenge the ALJ's assessment of Dr. Harley's opinion.

8

has an obligation to determine the RFC based on the evidence he finds credible.  Here, the ALJ's RFC assessment included those limitations that the ALJ found to be credible and supported by substantial evidence in the record.  The ALJ then presented all of the limitations of the RFC in his hypothetical questions to the VE, and the VE testified that there were jobs available for a person with these limitations, which the VE cited in detail.  The ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs available that Plaintiff can perform.  The ALJ's decision at step five is based on substantial evidence.

> 2. *Plaintiff's Argument that the ALJ's Decision is not Based on Substantial Evidence*

Plaintiff contends that "when the entire record is examined, including the entirety of the [VE's] testimony, it is clear that the [ALJ's] decision is not based on substantial evidence in the whole record." (Docket no. 17 at 6.)  Plaintiff's argument on this issue consists of a summary of the medical evidence followed by a few conclusory arguments in support of her position.  (Docket no. 17 at 7-17.)  For example, Plaintiff asserts:

- "[A] reasonable reading of the record will lead to the conclusion that claimant has met [Listing 12.04];"

- "In the present case, it is clear that the claimant's condition results in marked difficulties in maintaining social function and marked difficulties in maintaining concentration, persistence, or pace. . . . Therefore, on this basis as well, Claimant should receive a disability finding;"

- "A fair reading of the evidence should direct a finding that Plaintiff cannot perform a full range of unskilled labor;"

- "It seems clear that Claimant's [RFC] is for far less than sedentary work and that as set forth above, she is precluded from any sort of work (see discussion supra re [VE] testimony);" and

- "Nothing in the record contradicts the findings of Claimant's treating physician and therapist."

9

(*Id*. at 15, 16, 17.)

There are two significant problems with Plaintiff's argument. First, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted). Moreover, Plaintiff's burden is higher than "marshalling evidence to suggest that [s]he is disabled;" rather, Plaintiff must demonstrate that the ALJ's decision is not supported by substantial evidence. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014). Plaintiff fails to do so. Essentially, she invites the Court to reweigh the evidence and substitute its own judgment for that of the ALJ. This is not the Court's role. *Brainard, supra*, 889 F.2d at 681.

Second, it is clear from the ALJ's decision that he considered most, if not all of the evidence upon which Plaintiff relies. For example, Plaintiff summarized the report and opinion of Limited Licensed Psychologist Shelley Galasso Bonanno, M.A., who conducted a psychological consultative examination of Plaintiff on April 17, 2013. (Docket no. 17 at 7-9 (citing TR 309-17).) In her report, Ms. Bonnano recited the history of sexual assaults perpetrated against Plaintiff and her children by Plaintiff's husband; noted Plaintiff's complaints of panic attacks, nightmares, anxiety, and depression; assessed that Plaintiff had adequate contact with reality, poor self-esteem, limited insight, an organized stream of mental activity, and a blunted affect; diagnosed Plaintiff with post-traumatic stress disorder, panic disorder with agoraphobia, and major depressive disorder; and opined that Plaintiff's prognosis appeared guarded. (TR 309-17.) The ALJ specifically mentions Ms. Bonnano's "one-time, non-treating exam" and assigned it "no more than limited weight" on the basis that it took place during a brief exacerbation of

symptoms and that Plaintiff's subsequent mental status exams revealed mostly satisfactory functioning and no more than borderline mild symptomology. (TR 61-62.)

Plaintiff also describes the counseling treatment that she received at Care House of Macomb County and points out that one of her counselors found that Plaintiff met the criteria for PTSD as evidenced by her self-reported depression, hypervigilance, difficulty concentrating, anxiety, nightmares, and racing thoughts. (Docket no. 17 at 9 (citing TR 304).) Plaintiff also reproduced in her brief a May 14, 2014 letter from her counselor, Brenda Romanchik, to Dr. Guyer regarding the assessments and treatment that Care House was providing to Plaintiff. (Docket no. 17 at 9-10 (citing TR 379).) The ALJ also addressed the Care House evidence by discussing in detail a March 2013 assessment of Plaintiff, which revealed that Plaintiff was negative for inattention, mood swings, anger, decreased energy, worthlessness, and hopelessness; that Plaintiff had no impairment in friendship, peer relationships, or activities of daily living; that Plaintiff had only a moderate impairment in her ability to concentrate; and that Plaintiff did not need any further evaluations. (TR 60.) The ALJ also noted that Plaintiff's primary Care House intervention consisted of "[p]sychoeducation by handouts and suggested readings" and her secondary intervention consisted of relaxation strategies. (TR 61.) The ALJ further assessed little weight to the letter opinion of Ms. Romanchik, reasoning that her prognosis of chronic PTSD with debilitating panic attacks and incapacitating depressive symptoms was inconsistent with Dr. Guyer's treatment notes, which reveal borderline mild symptoms and satisfactory mental findings. (TR 62.)

Additionally, Plaintiff relies upon her ongoing treatment and medication management with Dr. Guyer, and how he found that she was totally disabled in February of 2014. (Docket no.

11

17 at 11-14 (citing TR 318-19, 356, 373, 374-78).) The ALJ considered and discussed Dr. Guyer's treatment notes and opinion as follows:

> While the claimant reported an exacerbation of symptoms in May 2013 (as her ex-husband's trial/sentencing neared) and she was referred to psychiatry (*See* Exhibits 6F and 7F), she has had good mental status exams from May 2013 through current, and the most recent note of record indicates a Global Assessment of Functioning (GAF) score of 60, which is indicative of one with borderline mild symptoms (*See* April 2014 note at Exhibit 12F). For example, a May 2013 mental status exam reveals proper orientation and satisfactory (i.e. "okay") thought processes, attention, concentration, comprehension, memory, judgment, and insight (Exhibit 10F). Likewise, a June 2013 mental status exam reveals proper orientation and satisfactory (i.e. "okay") thought processes, attention, concentration, comprehension, memory, judgment, and insight (Exhibit 10F). The claimant furthermore had a satisfactory general appearance with an absence of psychosis and suicidal/homicidal ideation, and a satisfactory fund of knowledge (Exhibit 10F). Although her treating psychiatrist opined she is unable to work as of February 2014, his March and April 2014 notes indicate no more than borderline mild symptoms and contain similarly (as discussed) benign mental status exams (Exhibits 10F, 11F, and 12F). Accordingly, the February 2014 statement is given little weight. Her date last insured is December 2013, making a February 2014 statement of inability to work not entirely relevant. Second, and most importantly, the treating notes (from her short-term treatment with the source) simply fail to support a finding of disability, as discussed.

(TR 61 (footnote omitted).)

Notably, Plaintiff, who is represented by counsel, does not challenge the ALJ's evaluation of Dr. Guyer's opinion or any other medical opinion evidence. The only challenge Plaintiff raises with regard to the medical opinion evidence, albeit undeveloped, is that "[n]othing in the record contradicts the findings of [her] treating physician and therapist." (Docket no. 17 at 17.) But, as discussed above, the ALJ aptly explained and demonstrated in his decision that Ms. Romanchik and Dr. Guyer's opinions were inconsistent with Dr. Guyer's own treatment notes and the results of Plaintiff's mental status exams. Plaintiff's argument therefore fails in this regard.

While the evidence cited by Plaintiff tends to support Plaintiff's assertions, there is also substantial evidence supporting the ALJ's conclusion, such as Dr. Guyer's treatment notes, which indicate no more than borderline mild symptoms and contain the results of benign mental status exams, the March 2013 Care House assessment, and Dr. Harley's opinion that Plaintiff was not disabled because she was still able to handle simple, repetitive tasks on a sustained basis. Therefore, this issue falls within the ALJ's zone of choice, and should not be disturbed.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 17) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 18).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  May 22, 2017            s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  May 22, 2017            s/ Lisa C. Bartlett
                                Case Manager